## R. J. BURRASTON, *v.* FIRST NATIONAL BANK OF NEPHI.

EVIDENCE — ATTORNEY AND CLIENT—STATEMENTS—ADMISSIBILITY —EVIDENCE—BOOK ENTRIES—CHECKS—NOTES—ACCOUNT STATED PRIMA FACIE PROOF—NON-SUIT—WHEN SHOULD BE GRANTED.

*Evidence—Attorney and Client—Statements—Admissibility.*

Where an attorney is employed merely "to straighten out an account," the relationship of attorney and client, in the ordinary acceptation of the terms, does not exist; the attorney becomes the mere agent of the party employing him, and statements then made by the attorney, in the presence of the

party employing him, expressing satisfaction with the account are admissible as tending to support defendant's plea of an account stated.

*Evidence—Book Entries—Checks — Notes — Account Stated, Prima Facie Proof.*

In an action on an account to recover a certain amount claimed to be due plaintiff on account of moneys deposited in defendant's bank, evidence that book entries in the books of defendant bank were correctly made; that certain notes and checks of plaintiff were returned to him in due course, some in person and some through the mail; that plaintiff made no objection and challenged none of the notes or checks; that plaintiff received statements of the account between himself and the bank on various occasions, to which he made no objection and offered no correction; and that after plaintiff ceased to do business with the bank, he received an itemized statement of all his transactions, to which he made no objection for more than three years, is *prima facie* proof of the execution of the notes and the issuance of the checks by plaintiff, and the books and the notes and checks are properly admitted.

*Non-suit—When Should be Granted*

*Prima facie* proof of defendant's plea of account stated in plaintiff's main case, is sufficient to warrant a non-suit.

(Decided September 5, 1900.)

Appeal from the Fifth District Court, Juab County. Hon. E. V. Higgins, *Judge.*

Action by plaintiff to recover a certain sum alleged to be due plaintiff on money deposited with the defendant company. Defendant answered denying generally and alleging as a further defense an account stated between plaintiff and defendant subsequent to the closing of business between them. From a judgment for defendant, plaintiff appealed. *Affirmed.*

*F. S. Richards, Esq.,* and *Messrs. Richards & Ferry,* for appellant.

No relation of principal and agent had been established between plaintiff and Sawyer, sufficient to bind the plaintiff by his admissions.

Upon this question the rule is correctly laid down in the 3d American and English Ency. of Law, 2d ed., page 327. See, also, 1 Am. and Eng. and Enc. of Law, page 698, and cases cited under note 6; 1 Greenleaf on Evidence, 14th ed.) Sec. 186; 2 Wharton on Evidence, (2d ed.) Sec.) 1184; *ay Treadw* v. *Sioux City Ry. Co.*, 40 Iowa, 526; *Saunders* v. *McCarthy*, 8 Allen (Mass.) 45; *Angle* v. *Bilby*, 25 Neb. 595.

In 1st Greenleaf on Evidence, 14th edition, Sec. 123, the rule is laid down that books of account are not admissible to prove a cash payment or loan, because other evidence would usually exist; citing the cases in note 3; and also that such entries are not admissible to prove the terms of a special contract for the same reason.   Here the better evidence was shown to exist.   2 Rice on Evidence, 824; *Smith* v. *Rentz*, 131 N. Y. 176; *Ruggles* v. *Gratton*, 50 Ills. 416; *Case* v. *Potter*, 8 Johns, 21; *Boyer* v. *Sweet*, 3 Scammon (Ills.) 120; Ward's Estate, 73 Mich. 225.

Not only should books of account be excluded under the common law upon the authorities we have cited, but the question has been expressly determined in this State by statute.   The statutory mode of proof having been promulgated it is to the exclusion of all others.   The record shows that these items were note entries.

The Revised Statutes of Utah, 1898, at section 3403, provide:

"Any writing may be proved either: 1. By anyone who saw the writing executed; or, 2. By evidence of the genuineness of the handwriting of the maker; or, 3. By a subscribing witness."

Under the common law the mode of proof was, first, by

a subscribing witness; if the subscribing witness was dead or under such disability that his evidence could not be procured, the execution of the instrument could then be shown by evidence of the handwriting of the maker; and even under this mode of proof the plaintiff would not be entitled to introduce the note upon the evidence produced; first, because the subscribing witness was not dead and he was not inaccessible; and, second, because evidence of the handwriting of the maker does not mean handwriting of the witness. *Servis* v. *Nelson*, 14 N. J. E. 94; *Hamilton* v. *Marsden*, 6 Binn (Pa.) 45; *Thompson* v. *Hatstead*, 44 West Va. 390; Am. & Eng. Ency. of Law, 2d Ed. Vol. 11, page 602.

*Messrs. Brown & Henderson*, for respondent.

Sawyer was the agent of the plaintiff, not merely the agent as attorney in the ordinary sense of the word as counsel seems to think, but agent, expert, attorney and friend who in Burraston's behalf was employed by him "to straighten out the matters in controversy." He went through the books to straighten them out and when he was through examining them he was satisfied they were already straight and said so. That was clearly a statement within the scope of his employment. Whether he was an attorney or bookkeeper or anything else, his statement of the thing he was hired to do was a proper statement.

After plaintiff ceased to do business with the bank he received a statement in full of every item deposited and drawn and this statement included his transactions by note as well as by deposit. He did not object to that statement for over two years. Of course that was an account stated which completely ended his right of action. *Hendy* v. *March*, 75 Cal. 566; *Oil Co.* v. *Van Etten*,

107 U. S. 325; *Wiggins* v. *Burkman*, 10 Wall. 129; *Lockwood* v. *Thorne*, 11 N. Y. 170; *Roach* v. *Gilmer*, 3 Utah, 389; *Fleischner* v. *Kubli*, 5 Pac. 1086.

Counsel at great length argued that the books of a bank are not upon the same basis as books of account, thus impliedly admitting that books of account are ordinarily admissible. 1st Greenleaf on Evidence, 116–119; 1st Wharton on Evidence, 682, *et seq.*

Their own authority of the evidence also shows that the books of the bank may be received. See 2 Rice on Evidence, 894.

They are also admissible on the ground that they are entries concurrent and therefore a part of the *res gestœ* under the rule laid down in the case of *DeArmond* v. *Neasmith*, 32 Michigan 231, where weather entries in the weather record kept at a State asylum were properly admitted. 1 Greenleaf, 116.

### STATEMENT OF FACTS.

Plaintiff brought this action to recover from defendant, a banking corporation, the sum of $11,768.53, alleged to be due plaintiff on deposits of money made by him with defendant between the 14th day of September, 1886, and the 30th day of January, 1894, at Nephi, Utah. The defendant answered denying the material allegations of plaintiff's complaint. And as a further defense defendant, in substance, alleged that plaintiff closed his account with the bank on the 9th day of June, 1894, and that a statement of his account was sent him showing that he had drawn all money theretofore deposited by him, and that there was nothing whatever due him on that date, but that he was fully paid for all deposits, and that he never alleged any error therein; and that defendant pleaded the same as a stated account.

It appears from the record that Burraston as a depositor had an open and running account with defendant bank from September, 1886, until June, 1894, and during said time made numerous deposits of money to the credit of his account, and issued checks against it. Sometimes Burraston would overdraw his account and then sign notes to the bank covering the amount of such overdraft, and when the notes so given became due, if he was not prepared to pay them, would give new notes and take up the old ones. Burraston could neither read nor write and signed the notes so given by making his mark. The bank from time to time sent him statements showing the condition of his account and returned the checks duly cancelled that he issued against his account, also the notes given by him to the bank as they became due and were paid. During the entire time he did business with the bank he made no objections to his account as shown by the statements sent him, nor did he challenge the validity or genuineness of the notes or checks so returned.

The first year Burraston did business with the bank he personally attended to it, and the greater part of the remainder of the time (nearly seven years) his daughter at his request looked after his business for him, he being in Nevada the greater portion of the time. During his absence she signed several notes for him to cover overdrafts he had made on the bank. While he was in Nevada he sent in deposits by mail, and during this time his son and other parties also made deposits to his credit at the bank. Before leaving for Nevada he directed the cashier to permit his wife, or other members of his family on her order to draw against his account. The testimony also shows, in fact it was admitted by Burraston himself, that he verbally directed the bank to pay money to certain parties to whom he was indebted, which the bank did, charg-

ing the amounts against his account. During the greater portion of the time he did business with the bank one Alma Hague was cashier, and signed as a witness most of the notes given by Burraston to the bank. Hague left the bank about the time plaintiff ceased doing business with it. After Hague left and Burraston's account had been closed, Hague, at his request, went with him to the bank and examined the account. Burraston at the time made no objection to the account, and one of the witnesses testified that when they ceased the examination, Whitmore, the president of the bank, asked Burraston, referring to the account, how it came out, and that Burraston answered "all right."

This testimony, however, was denied by Burraston. Burraston afterwards procured the services of one Sawyer, an attorney, and in company with him went to the bank and procured the books containing his (Burraston's) account and made an examination of them for the purpose of ascertaining if there were any errors in the account. Neither Burraston nor Sawyer made any objections to the account as shown by the books. C. L. Hyde, one of the employees of the bank, testified that he was present at the time the examination was made, and that Sawyer, at the conclusion of the examination, expressed himself as being satisfied with the account and stated that it was all right. Soon after Hague left the bank, the defendant, at Burraston's request, furnished him with an itemized statement of his account covering the entire time that he had done business with the bank, to which statement he made no objections for nearly three years after he received it. Burraston submitted the statement to an attorney, W. C. A. Bryan, who examined him as to the various items therein contained.

Burraston was cross-examined at great length as to his

knowledge and recollection of the many alleged transactions he had with the bank as shown by the statement, many of which he admitted to be correct; some he was doubtful about but would not deny; some he denied, and others he did not remember. On demand of the bank he furnished it with a bill of particulars verified under oath by him, which showed forty-nine alleged deposits made by Burraston at different times and covering a period of over seven years and amounting in all to $16,294.29. The credits of the bank acknowledged by Burraston, as shown by the bill of particulars, amounted to $2,721.64. Some of the items charged against the bank in the bill of particulars were denied by Burraston while testifying as a witness in his own behalf at the trial of the case. Burraston also testified that on October 17, 1887, he signed a note for $5,000.00, to cover an overdraft he had made on the bank, and his bill of particulars, sworn to by him, showed that he had to his credit in the bank over $2,500.00 at the time he gave the note. He further testified that on January 20, 1893, he signed a note for over $1,600.00 to cover his indebtedness at the bank, whereas his bill of particulars showed that he had to his credit in the bank at the time the note was given, more than $12,000.00. The record shows that a great many notes were given by Burraston to the bank. Some he admitted executing, some he denied, and as to the others he claimed that he had no recollection as to whether he executed them or not.

The issues were tried by a jury who returned a verdict for the defendant, "no cause of action." Plaintiff appeals.

McCARTY, District Judge, after stating the foregoing facts, delivered the opinion of the court:

Appellant complains of and alleges as error the admission of testimony as to the statements made by Sawyer at

the time he examined the books of the bank containing the account under consideration, wherein he expressed himself as being satisfied with it on the grounds: First, that Sawyer at the time was Burraston's attorney, and therefore he, Burraston, could not be prejudiced by any statement made by his attorney respecting the condition of the account; and second, that the statement was a conclusion and not one of fact, and that it was hearsay testimony. Burraston could neither read nor write and did not understand figures. He was therefore unable to examine the account himself to detect errors in it, if any there were. Sawyer was there in his behalf acting for him and with authority as testified to by Burraston, "to straighten out the account." The relationship of attorney and client did not exist between them in the sense that the term is ordinarily used and understood. Sawyer was there as Burraston's accountant to examine and "straighten out the account," under consideration, and for that purpose he was Burraston's agent.

Mechem on Agency, Secs. 714, 715 and cases cited.

Sawyer having gone to the bank in company with Burraston, and as his agent examined the account in question, the statement complained of was admissible in evidence as tending to support the allegation in defendant's answer of an account stated. 2 Greenl. Ev. (14th ed.) Sec. 125.

The books of the bank showing the different entries made in Burraston's account in connection with the notes given by him to the bank and the checks issued by him on the bank that had been paid, cancelled and returned to him, were admitted in evidence over his objections. Counsel for appellant contends that there was no evidence introduced showing that the notes were executed and the checks issued by Burraston, and that therefore the admission of the books, notes and checks in evidence was error. Most of the notes and checks under consideration were

given and issued while Hague was cashier for the bank, and many of them were signed by him as a witness. At the time the case was tried Hague was a convict and serving a term of imprisonment in the State prison in Salt Lake City, Utah. Before the books were admitted in evidence, the parties (bookkeepers who kept the books) were called and identified them and testified to making the different entries in Burraston's account, and that they were correct.

The record shows that the notes and checks in question when paid were returned to Burraston, many of which were handed to him in person by the cashier at different times, and others were transmitted to him through the mail; and on no occasion did he make any objection to or challenge the validity of the notes so paid by him, or the checks issued against his account that were paid, cancelled and sent or handed to him by the bank. This, coupled with the fact that he received from time to time statements showing the condition of his account while he was doing business with the bank, to which statements he made no objections and offered no corrections, together with the further fact that after he ceased doing business with the bank, he received an itemized statement of all the different transactions, including those relating to the notes, he had with the bank, to which statement he made no objection for more than three years after its receipt by him, we think was, at least *prima facie* proof of the execution of the notes and the issuing of the checks in question by Burraston. We are of the opinion and so hold that the books, notes and checks were properly admitted in evidence.

Counsel for defendant contend that there was an account stated between the parties which completely ended plaintiff's right of action. We have made a critical examina-

22 Utah—22.

tion of the record and are decidedly of the opinion that the evidence conclusively showed that there was an account stated. There was no conflict in the evidence on this point. In fact the testimony of Burraston tended to support this theory of the case.

Defendant's motion for a non-suit, made at the conclusion of the testimony for plaintiff, and after he had rested his case, should have been granted, as he failed to make out a *prima facie* case against the defendant.

There are several other errors assigned but we do not deem it necessary to consider them.

We find no reversible error in the record. The judgment of the trial court is therefore affirmed. The costs of this appeal to be taxed against the appellant.

BARTCH, C. J., and BASKIN, J., concur.