29 C.C.P.A.(Patents)

## RAYMOND et al. v. WICKERSHAM.

### Patent Appeals No. 4290.

Court of Customs and Patent Appeals.
June 15, 1942.

James E. Watson, and Samuel A. King, both of Washington, D. C., and R. Welton Whann, of Los Angeles, Cal. (Carroll B. Spencer, of Columbia, S. C., of counsel), for appellants.

Robert E. Barry and A. A. Cyr, both of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

## PER CURIAM.

Appellants, Edward F. Raymond, alleged inventor, and Ira J. McCullough, his exclusive licensee, petition this court "for relief from its judgment and decision heretofore rendered herein on the 8th day of April, 1940, affirming the opinion of the Board of Appeals, of the United States Patent Office, rendered February 3, 1939, which opinion adopted and approved the decision of the Examiner of Interference, awarding priority to the Appellee, Harry P. Wickersham, for his application * * * and denying priority to the applicant, Edward F. Raymond * * *." It is stated that the petition is for the purpose of preventing the appellee, Wickersham, "from enjoying the benefits arising under a Judgment and Decree of this Honorable Court, which was procured by the willful perpetration of a fraud by the said Appellee, Wickersham, upon both the United States Commissioner of Patents and this Honorable Court"; that the fraud resulted from the wrongful failure to disclose facts which in good conscience should have been presented; and that the petition is intended "to protect this Honorable Court and the patent officials from being instrumental in perpetrating said fraud." The petition asks for a recalling and revoking of the judgment and that the questions involved be resubmitted and redetermined upon a hearing de novo.

The grounds upon which the petition is based were stated as follows: "Because Courts of general and superior jurisdiction possess certain inherent power not derived from any statute, to make, modify, and enforce rules for the regulation of the business before the court; to amend its record and proceedings; and to recall and control its process. Such inherent powers of the court is [are] necessary to the proper discharge of their duties. Unless such powers and summary jurisdiction are abridged or regulated by legislation, a constitutional court of general and superior jurisdiction may exercise such inherent power and summary jurisdiction as the necessities of the case may require and in a manner comporting with the proper discharge of its duties in the premises."

The petition alleges that immediately following the opinion and judgment of this court rendered April 8, 1940, Raymond et al. v. Wickersham, 110 F.2d 863, 27 C.C.P.A. (Patents) 1079, appellant Raymond and his exclusive licensee, McCullough,

accidentally obtained definite and conclusive evidence that Wickersham knew he was not the original inventor, but that he appropriated and copied the jar design and work of appellant Raymond.

Several contentions are made by appellants, which may be briefly summarized as follows:

1. That appellee never was the original inventor of the well jar in question and at all times knew said fact; that he obtained his idea of said jar through knowledge acquired of appellants' device.

2. That the records before the Patent Office tribunals and before this court show that appellee was not the original inventor of the device and definitely show that appellants had successfully reduced the invention to practice before the reduction to practice by appellee and that appellants were concededly the first to conceive the invention.

3. That new and heretofore undisclosed evidence bearing upon the above contentions has been discovered and is submitted in the form of affidavits.

This interference was instituted in the Patent Office in 1934. It is here interesting and important to review the history of the involved litigation. Upon testimony of certain witnesses the Examiner of Interferences of the United States Patent Office originally concluded that appellant Raymond had successfully reduced his device to practice by work done on the Bradley-King No. 1 well and the Acme No. 1 well, although the alleged date of reduction to practice given in the preliminary statement was an earlier date, at Bakersfield, California. (It is not questioned that appellant Raymond satisfactorily proved that he was entitled to a date for conception of the involved invention earlier than any conception date which could be awarded to Wickersham.) Appellee appealed to the Board of Appeals of the United States Patent Office, which affirmed the action of the Examiner of Interferences in awarding priority to Raymond.

Before the decision of the board became final, appellee submitted proof which showed that the work on the Bradley-King well and Acme well could not have been done as testified to by appellants' witnesses. The board then reversed its decision and remanded the case to the Examiner of Interferences, who, upon the new testimony, which was ordered to be confined to the work done on the two said wells, reversed his former decision and awarded priority of invention to the appellee. This award, upon appeal to the board, was affirmed, and the board's decision was affirmed by this court in its judgment of April 8, 1940, Raymond et al. v. Wickersham, supra.

No petition for rehearing was filed within the time required by the rules of this court.

On May 13, 1940, appellants filed motion to stay mandate upon the grounds of newly discovered evidence. This motion was denied May 15, 1940, and on the same date the final order was issued to the Commissioner of Patents.

On June 11, 1940, the Patent Office issued to appellee patent No. 2,204,458, covering the involved invention.

On June 15, 1940, appellants, in this court, moved to reopen the interference on the ground that the evidence set forth in the "accompanying affidavits" could not have been sooner obtained even by the exercise of great diligence; that the Raymond jar was actually used on the Acme No. 1 well after the shutting down of the well; and that Wickersham was not an original inventor, but obtained knowledge of the Raymond invention long before any date proven for Wickersham's conception. This motion was denied June 21, 1940.

On June 29, 1940, appellant Raymond requested reconsideration of the motion to reopen the interference on the grounds, first, that the new evidence was material and not cumulative; second, if admitted it would probably induce a different decree; third, that it was probably true; and fourth, that the moving party exercised all diligence in procuring said evidence. On July 8, 1940, the request was denied.

Appellants filed, on October 29, 1941, a petition to vacate judgment and to order a rehearing upon the ground of fraud by the appellee Wickersham upon the Commissioner of Patents and this court. This petition was denied for want of jurisdiction.

On January 27, 1942, appellants filed a motion and brief seeking to have this court vacate judgment and to order rehearing. This is the motion that is pending before the court at this time.

While appellants make many contentions, the only one which calls for any consideration here is the power of this court, under

the circumstances, to comply with appellants' request and particularly to determine whether or not the statements of facts presented by appellants make applicable the broad principle of law that a court, *when it has been defrauded into giving an erroneous judgment,* has the inherent power, regardless of statutory authority, rules, or term-end limitations, to reverse its said judgment and direct further action in order to bring about a proper and just decision of the issues involved in the judgment.

Appellants' counsel, evidently in order to make applicable certain principles announced in cases hereinafter discussed, urge strongly that this court has power to grant the relief petitioned for, for the reason that fraud has been perpetrated upon it and that it should so act in the interest of protecting the "integrity" of the court. Much of the subject matter of appellants' motion papers and brief is devoted to discussing the evidence and issues involved in this court's decision, which might have been proper for discussion in a petition for rehearing. Great emphasis is also placed upon the subject of newly discovered evidence. Much of the alleged newly discovered evidence, at most, is cumulative in character, and but little of it is directed to the question of fraud, except as fraud is alleged to have been imposed upon the patent tribunals and this court by failure on the part of appellee to disclose pertinent facts known to him.

While appellee on this motion has filed in this court what appears to be a very carefully prepared brief consisting of 157 pages, he has not briefed the subject of the right of appellants to invoke the alleged broad, inherent power of a court to act in a case of fraud. Appellee has sought in his brief to point out in the record and various motion papers that there is no justification for complying with appellants' request "even if it be considered that the Court has inherent power so to do."

Appellants rely upon several cases for authority supporting their contention that this court has such power, but it is not necessary to discuss them all. Among them are Root Refining Co. v. Universal Oil Products Co., 3 Cir., 78 F.2d 991; Illinois Printing Co. et al. v. Electric Shovel Coal Corporation, D.C., 20 F.Supp. 181; In re Rochester Sanitarium & Baths Co., 2 Cir., 222 F. 22; In re Evans et al., 42 Utah 282, 130 P. 217; and Wayne United Gas Co. v. Owens-Illinois Glass Co. et al., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557.

The other cases cited need not be specifically referred to since obviously they are no more in point than the above cases cited. None of the cases cited by appellants support their contention that this court, under the circumstances at bar, has the authority, either statutory or inherent, to comply with their request.

In the Root Refining Co. case, supra, the court, six years after rendering a decision, ordered an investigation, upon petition of counsel for various defeated parties. It related to valuable patents and processes in oil refining. The Circuit Court, in an opinion written by Judge Davis, upheld the decision of the District Court. Universal Oil Products Co. v. Winkler-Koch Engineering Co., D.C., 6 F.Supp. 763. The Supreme Court had denied certiorari. Root Refining Co. v. Universal Oil Products Co., 296 U.S. 626, 56 S.Ct. 149, 80 L.Ed. 445. The investigation was ordered upon a showing that one Kaufman and Judge Davis, a resigned member of the Third Circuit Court of Appeals, had been charged with and indicted for conspiracy to obstruct justice and to defraud the Federal Government in the William Fox bankruptcy proceedings. Nothing is submitted to us to show what the Circuit Court of Appeals did about it or what they could have done in the premises. The investigation apparently is still taking place. This case is certainly no authority for holding here that this court has, more than two years after the rendition of a judgment and the issuance of the mandate and almost two years after the issuance of a patent, the power to set aside the judgment and order a trial de novo of the issues involved, especially when it is not shown that this court was defrauded or misled by the conduct of the litigants or their counsel. Obviously the Circuit Court of Appeals of the Third Circuit had the power to order an investigation of the misconduct of one of its own judges. What bearing has that on the issue involved here? We think, none whatever.

The next case particularly stressed by appellants is In re Evans et al., supra. This involved a ruling of the Supreme Court of Utah. In 1900 an information was filed against David Evans and Lindsey R. Rogers, attorneys at law, charging them, in effect, with champertous conduct in respect to a contract entered into by them to

prosecute a suit for damages against a certain railroad company upon a contingent fee. The said Supreme Court adjudged the parties guilty and deprived them of the right to practice in any of the courts of the state until they paid into the court the sum of $1,793, together with certain costs. In the event the sum was not paid within sixty days, they would be permanently disbarred and their names stricken from the rolls of attorneys. See In re Evans & Rogers, 22 Utah 366, 62 P. 913, 53 L.R.A. 952, 83 Am.St.Rep. 794. The attorneys paid the money and there the matter rested until 1912, more than eleven years after the rendition of the judgment, at which time they filed a petition in the Supreme Court of Utah asking for a rehearing and a review of the record and judgment. The Attorney General as well as appointed counsel, the latter appearing as friends of the court, conducted the hearing. In the opinion written by Mr. Justice Straup the following is found [42 Utah 282, 130 P. 224]: "Now, recurring to the question of our jurisdiction to at this time entertain the petition for the prayed relief: If we have no such power, the stipulation filed by counsel cannot confer it. There is no direct legislation or constitutional provision which, in express terms, prescribes our power in such particular; nor is there anything which limits, restricts, or prohibits it. It is undoubtedly true that courts of general and superior jurisdiction possess certain inherent powers not derived from any statute. Among these are the power to punish for contempt, to make, modify, and enforce rules for the regulation of the business before the court, to amend its record and proceedings, to recall and control its process, to direct and control its officers, including attorneys as such, and to suspend, disbar, and reinstate attorneys. Such inherent powers of courts are necessary to the proper discharge of their duties. Such powers and summary jurisdiction may, within certain limits, be abridged, and the procedure with respect to the exercise of them be regulated, by legislation. But, unless so prescribed and limited, a constitutional court of general and superior jurisdiction may exercise such inherent powers and summary jurisdiction as the necessity of the case may require, and in manner comporting with a proper discharge of its duties in the premises."

In a concurring opinion by Judge Frick, it was said: "* * * No court should hesitate to correct any wrong arising out of its judgments, when it is within its power to do so. This is especially true with respect to any judgment which affects the honor, integrity, standing, or morals of its officers. * * *"

It will be noticed that that was an original proceeding in the Supreme Court of Utah. That court concluded that it had been defrauded and that it was within its power to right a wrong when the lawyers petitioned for relief. Its judgment was the only thing that stood in the way of the petitioners' having full relief. The petitioners were officers of the court. It was the duty of the court to protect itself and its officers. No such situation is at bar. This court has not been defrauded. Its integrity is not in question.

For the purpose of making applicable certain decisions and principles of law, to which we will presently advert, we again call attention to the fact that appellants' able counsel have adroitly invoked a principle involving fraud practiced upon the court from which the judgment is obtained, which, as far as we have observed, has never occurred in any appellate tribunal wherein the alleged fraud originated in a lower tribunal. It is to be noted that no mention is made in the briefs of the parties calling attention to the well-settled rule in Federal courts that after the expiration of the term in which the judgment was obtained, the court has no jurisdiction to reverse the same and grant a new trial or take any other ordinary procedure which it could do upon a proper showing during the term when the judgment was rendered. At any rate, under present circumstances it is clear that we need give no consideration to the question of the terms of court of this tribunal or the applicability of any doctrine relating to the "term-end rule."

Much of the subject matter involved here was under consideration by the United States Supreme Court in the case of United States v. Throckmorton, 98 U.S. 61, 68, 25 L.Ed. 93. In that case, twenty years after the rendition of a judgment relating to a land patent obtained upon a fraudulent document, the government sought, by a bill in chancery brought in the Circuit Court of the United States for the District of California, to set aside the judgment of the said Circuit Court which confirmed the claim (fraudulently made) to certain lands, which confirmation was made by the board of commissioners of private land-claims in California. The most essential part of the

holding by the Supreme Court in the said *Throckmorton* case, as applicable here, is expressed in the following language:

" * * * We think these decisions establish the doctrine on which we decide the present case; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.

"That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

In the opinion we further find the following statement:

" * * * Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. [citing various authorities]

"In all these cases, and many others which have been examined, relief has been granted, on the ground that, by some fraud practised directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court.

"On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. Mr. Wells, in his very useful work on Res Adjudicata, says, sect. 499: 'Fraud vitiates every thing, and a judgment equally with a contract; that is, a judgment obtained directly by fraud, and not merely a judgment founded on a fraudulent instrument; for, in general, the court will not go again into the merits of an action for the purpose of detecting and annulling the fraud.' * * * 'Likewise, there are few exceptions to the rule that equity will not go behind the judgment to interpose in the cause itself, but only when there was some hindrance besides the negligence of the defendant, in presenting the defence in the legal action. * * *.' "

One of the main considerations which brought the Supreme Court to its conclusion that the judgment attacked could not be set aside was the policy of law which required that in the interest of the public there should be an end to litigation, expressed in the maxim interest rei publicae, ut sit finis litium, there applied.

It may here be noted that in Publicker v. Shallcross et al., 106 F.2d 949, 950, 126 A.L.R. 386, the Circuit Court of Appeals of the Third Circuit, in a case involving setting aside a judgment under circumstances different from those at bar, discussed the Throckmorton case, supra, and stated that it would not follow that case because of the fact that in the first place the case did not apply and that in the second place it no longer was "the law of the Supreme Court" for the reason that a later decision, Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870, is in conflict with it. Regardless of whether the latter decision conflicts with the former, we are sure that the former has more application to the particular facts of the instant case than the latter.

▓ Citing and quoting from the Throckmorton case, the Circuit Court of Appeals of the Ninth Circuit in Nelson et al. v. Meehan et al., 155 F. 1, 6, 12 L.R.A., N.S., 374, in an opinion delivered by District Judge William H. Hunt, a former member of this court and later of the United States Commerce Court, used the following language, which seems to be applicable to the issue presented here: "It has been earnestly insisted by counsel for the appellees that the District Court had an inherent power to vacate the decree even after the term had expired, because the fraud in the judgment vacated rested

upon the perjured testimony of the prevailing party, and upon such perjured testimony alone. But we believe that the great weight of authority is against this contention, and that the acts for which a court of equity will on account of fraud annul a judgment or decree between the same parties after the term has ended have relation to frauds extrinsic or collateral to the matter tried, and not to a fraud in the matter on which the decree was rendered. The leading case of United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93, establishes this precise doctrine. * * *"

See, also, Angle v. Shinholt et al., 5 Cir., 90 F.2d 294.

Aside from the charge that witnesses of appellee gave perjured testimony in the early stages of the interference proceeding in the Patent Office, it is argued by appellants that fraud was practiced upon this court and the tribunals below by the withholding of evidence within appellee's knowledge which would have defeated his right to acquire a priority decision. In McDougall v. Walling et al., 21 Wash. 478, 58 P. 669, 671, 75 Am.St.Rep. 849, a decision by the Supreme Court of the State of Washington, we find the following pertinent language: " * * * In Allen v. Currey, 41 Cal. 318, where the opposite party was sworn as a witness, and knew of a fact which, if proved, would have given judgment to the other party, and failed to disclose it, the court said: 'But it is quite evident that, if a judgment could be set aside as fraudulent on such a showing as this, litigation would be interminable. If, on another trial, the plaintiff should still fail to maintain his case, he might, on the same theory, thereafter institute a new action on the discovery of additional evidence, and so on ad infinitum. If the losing party were permitted to assail the judgment as fraudulent on the ground that his adversary knew the facts to be as he claimed them to be at the trial, and failed to disclose them, and that he has since discovered some additional evidence tending to prove them, a judgment, instead of being a "final determination of the rights of the parties," as defined by the statute, would·be little else, in its legal effect, than an order to show cause why it should not be set aside.' * * * *It cannot be the rule that a judgment can be attacked for fraud because in the trial the prevailing party defendant failed to voluntarily disclose the weakness of his defense, or some evidence which would tend to overthrow his defense.* Ordinarily, the pleadings must determine what issues will be tried; and it has never seemed to be the practice that a party must disclose to his adversary what his testimony will be, or that he must suggest testimony for his adversary. Where interrogatories are propounded to the opposite party, he must answer, and answer truly. If his answer be false * * *, then it may be fraud sufficient to vacate any judgment which such false answer supports." [Italics ours.]

This statement of the law, in the portion italicized above, seems to us to be so well settled that the question needs no further lengthy discussion. See Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719.

Vining v. American Bakeries Co. et al., 121 Fla. 116, 163 So. 396, a decision by the Supreme Court of Florida, and American Bakeries Co. v. Vining et al., 80 F.2d 932, by the Circuit Court of Appeals of the Fifth Circuit, the latter being a suit aimed at enjoining a threatened sale under a judgment obtained in the former, seem to be very much in point on the issue now under consideration.

The Florida Supreme Court said, among other things [121 Fla. 116, 163 So. 398]: "It cannot be said as a matter of law that a new trial ought to be granted whenever an important witness against the losing party in the case shall have made an affidavit, or given evidence under oath in some other proceeding, that he committed perjury in his testimony; if that were so, justice would be defeated in many grave cases, because recanting testimony is to be regarded as very unreliable, especially when it involves a confession of perjury for which no actual conviction and adjudication of guilt by a court has been had. Indeed, the mere fact that an important witness has come forward, or been induced or procured to confess himself a perjurer at the trial, does not ipso facto sustain a trial court, even before the judgment has been appealed to the Supreme Court and affirmed, in granting a new trial upon such circumstances, which by the agreeing opinion of all the courts is regarded with suspicion and distrust as a ground for upsetting what has already passed into verdict and judgment. [citing a great number of authorities]"

In the second of these last-cited cases, the petition to enjoin the threatened sale

under the judgment of the Florida court was grounded upon the fact that certain witnesses of Vining, who recovered the judgment from American Bakeries Co., had perjured themselves. In upholding the Supreme Court of Florida relating to its powers to set aside the judgment, the Circuit Court of Appeals said [80 F.2d 933]: "* * * The fraud and perjury were not so successful as to deceive the opposite party and prevent a contest. The truth of the testimony was controverted and passed on by the jury. The bill really sets up that there is now better and more satisfactory proof of its falsity than the mere contradiction of it then offered to the jury. * * *"

The general principle that courts, under circumstances such as those at bar, do not have the power to reverse or modify their judgments is supported by Fidelity Storage Co. v. Urice et al., 56 App.D.C. 202, 12 F. 2d 143.

The other cases cited by appellants are relied upon chiefly by reason of the fact that they contain statements relating to the general principle of law that courts have an inherent power to set aside their judgments on the ground of fraud practiced upon them, including fraud which prevented the unsuccessful party from exhibiting his case fully. As far as we have been informed, the appellee and his counsel have perpetrated no fraud upon this court, nor have they in this court, to our knowledge, prevented appellants from fully presenting their case.

The principle of law which appellants seek to invoke here has been applied in appellate tribunals, under certain circumstances differing from those at bar, in a number of cases which are cited in 84 A.L.R. 595, under the heading, "Power to reconsider a decision obtained by fraud." It is sufficient to say that the great weight of authority there collected and discussed is to the effect that an appellate tribunal, after its judgment has become final and the mandate issued, has no jurisdiction or power to recall its mandate or reverse or modify its judgment except and unless such action is based upon a fraud *perpetrated in and upon the appellate court itself.*

To acquiesce in the position of appellants would be to sanction the proposition that in every case, newly discovered evidence or charges of fraud or concealment in the taking of evidence in the trial tribunal could be raised long after final judgment in an appellate tribunal, which tribunal, as in the instant case, is by statute limited to the record made in the tribunal below. We may add in passing, although it is not necessary to a decision in this case, that we have very grave doubts as to whether this court could at any time set aside its judgment on the ground of newly discovered evidence, which evidence was competent in the trial by the lower tribunal.

A glance at the above statement of the proceedings had in the tribunals below and in this court over a period of approximately eight years discloses that appellants have had unusual opportunities to have their day in court, and that if the patent system is to continue as an important factor in American economic life, it is highly important that long and unjustifiable delays in determining inventors' rights should be discouraged.

We feel much as did the Circuit Court of the Southern District of New York in the case of Ocean Ins. Co. v. Fields, Fed. Cas. No. 10,406, 2 Story 59, when, in the opinion written by Mr. Justice Story, it stated: "* * * it is for the public interest and policy to make an end to litigation, or, as was pointedly said by a great jurist, that suits may not be immortal, while men are mortal. * * *"

For reasons hereinbefore stated, the motion of appellants is denied.

Denied.