39 C.C.P.A.(Patents)
### SMITH v. HAYWARD.

Patent Appeals No. 5619.

United States Court of Customs
and Patent Appeals.
Dec. 18, 1951.

Edward A. Haight, Chicago, Ill., for appellant.

James P. Burns, Washington, D. C., for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

O'CONNELL, Judge.

This proceeding relates to a petition by the party Smith, appellant. In effect, the petition involves a bill of review in equity [1] of a final judgment previously rendered by this court on an appeal taken from the decision of the Board of Interference Examiners of the United States Patent Office in an interference proceeding, the petitioner alleging here that the party Hayward, appellee, perpetrated a fraud upon the court in that case: Smith v. Hayward, 176 F.2d 914, 37 C.C.P.A., Patents, 718.

The opinion in the case sets forth in detail the issue and basis for our conclusion on the question of priority. Reference is made thereto for a complete background of this proceeding. It may be noted also that a great deal of the subject matter of petitioner's papers and brief here is devoted to a discussion of the evidence and issues involved in the court's original decision.

The decision of the court was filed June 28, 1949; and pursuant thereto the mandate of the court was issued October 13, 1949, the claims of Hayward's involved application were allowed October 27, 1949, and the patent, No. 2,489,180, was granted to Hayward November 22, 1949. Those reported dates raise a serious doubt as to whether the party Smith has brought his petition within the period of time prescribed by Rule 60(b) of the Federal Rules of Civil Procedure.[2]

Every application for a patent is affected with the public interest, however, and a charge of fraud for perjury in respect to the granting thereof is a matter of grave concern not only to the tribunals of the Patent Office but also to every court of competent jurisdiction.[3] The issue raised by the petition here has been given full consideration therefore and will not be decided on purely jurisdictional grounds, bearing in mind that where events subsequent to an appeal may affect the correctness of our judgment, the court in a proper case may vacate the judgment and remand the cause for further proceedings as requested by the petitioner.[4]

The essence of the counts of the involved interference related to a new method of continuously detecting the presence of combustible gas occluded in the circulating mud at the top of an oil or gas well during the drilling operation of the well by the rotary method. The petitioner properly states in his brief that: "A reduction to practice of such a method requires that it be established that the method will show gas where it exists, and will not show gas where it does not exist." Moreover, both inventors in their respective specifications point out that the invention of the counts defines a method of continuously detecting the presence of gas and the quantities thereof, "even *the most minute quantities of gas,*" for the purpose of promptly warning the drilling operator so as to prevent the incipient blowout of the well with disastrous results.

1. Josserand v. Taylor, Jr., 159 F.2d 249, 34 C.C.P.A., Patents, 824; Raymond v. Wickersham, 129 F.2d 522, 29 C.C.P.A., Patents, 1166.

2. That rule, *inter alia*, provides that: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; * * *. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." 28 U.S.C.A.

3. Precision Instrument Mfg. Co. v. Automotive Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381.

4. Walling v. James V. Reuter Co., 321 U.S. 671, 64 S.Ct. 826, 88 L.Ed. 1001.

Two such drilling operations at wells have been respectively identified throughout the litigation as the Barrow No. 1 Well and the Keeran No. 1 Well, and Smith in his petition alleged that the Patent Office and the court's findings in the interference were based on testimony that those wells "were successfully completed and *produced gas* from the stratum shown to contain gas by Hayward's use of the method."

Smith, with reference to his petition, states in his brief that:

"Exhibit 1 attached to Smith's Petition is the official report filed by Hayward's employer, the Barnsdall Oil Company, with the Department of Conservation of the State of Louisiana with respect to the Barrow No. 1 Well. The form has a space for reporting 'Oil and Gas Zones'. This is answered by Hayward's employer: 'None'. The final notation on the first page of this official report states '*Abandoned as dry hole: no gas or oil shows*'. Thus the Barrow No. 1 Well contained no gas show for Hayward to detect. All that he could have determined was what the affidavits in support of his opposition (Exhibit D of Memorandum in Opposition) characterized as 'inconsequential characteristics'.

\*　\*　\*　\*　\*　●

"Smith's position is that Hayward deliberately withheld from Smith, the Board, and this Court the essential information that his employer had abandoned the Barrow No. 1 Well and had reported to the State of Louisiana 'No gas or oil shows'."

The form or questionnaire filled out by the Barnsdall Oil Company for the records of the state of Louisiana did not contain the impressive emphasis that the petitioner has employed in the quotation hereinbefore set forth. That emphasis, together with other similar matters therein set forth in the petitioner's original petition, caused this court to hear the petition here involved.

Reliable evidence contained in the affidavits of experienced petroleum engineers submitted by Hayward in reply to Smith's allegations, however, uniformly state that abandonment reports "as a general practice, do not carry indications of non-commercial gas shows" and that in the state of Louisiana, particularly, where the Barrow No. 1 Well was drilled, "small gas shows are encountered and the inconsequential characteristics of such shows dictate the abandonment of the well" as a dry hole.

The petitioner Smith has proceeded here on the expressed assumption that "One does not operate a well without producing something from it. The drilling of a worthless hole in the ground and abandoning it, is not the operation of a well." Hayward proceeds on the unexpressed assumption that the last quoted statement is axiomatic. Hayward contends, however, that whether a well, during the drilling of which the method of the counts was practiced, ultimately turned out to be a producing well or an abandoned dry hole is absolutely of no importance.

■ Hayward in support of his position points out here, that quite apart from the completely irrelevant information filed with the state of Louisiana by Hayward's employer, the Barnsdall Oil Company, collateral evidence in the original case to the very same effect on the point in question as the evidence now placed before the court was made fully available to Smith during the prosecution of the interference proceeding and was further available as to its credibility by cross-examination. In the situation just described, our court has recently held that where counsel by due diligence could have adduced the controverted evidence in the interference proceeding, a party or his legal representative may not be relieved here of his inadvertence or neglect. Learned v. Thompson, 191 F.2d 409, 39 C.C.P.A., Patents, ——.

■ The petitioner's brief also vigorously urges that the word "completion," employed by some of Hayward's witnesses in reference to the drilling of the Barrow No. 1 Well, is tantamount to the promulgation of a false impression that the well was a producing well. The term in question has been judicially defined, however, by appellate courts having jurisdiction in the gas and oil fields to designate a well drilled to the extent that either oil or gas has been found, or is not likely to be found in paying

quantities, by drilling deeper,[5] or drilled to that reasonable depth at which the product in paying quantity was usually proven or disproven to exist in that particular locality.[6]

We have critically examined all other evidence and points submitted by the petitioner Smith and find there is no merit whatever with respect to any fraud or misrepresentation on the part of Hayward, his witnesses, or his counsel in the involved litigation.

For the reasons hereinbefore stated, Smith's petition is hereby denied.

Denied.

Albert J. Fihe, Burbank, Cal. (Munson H. Lane, Washington, D. C., of counsel), for appellant.

John H. Cassidy, St. Louis, Mo., for appellee.

---

5. Frost v. Martin, Tex.Civ.App., 203 S. W. 72.

6. Britton v. Cotton States Petroleum Co., Tex.Civ.App., 283 S.W. 887.