**Application of Edgar L. JONES et al.**

**Patent Appeal No. 9158.**

United States Court of Customs and Patent Appeals.

Sept. 23, 1976.

Arnold G. Gulko, Arlington, Va., attorney of record, for petitioner.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

Petitioners request recall of our mandate in Patent Appeal No. 9158, involving application serial No. 677,739, filed October 24, 1967, for "Electrostatic Copy Paper Containing Manganous Salt." The petition is denied.

1. CCPA Rule 6.2(a), effective January 1, 1974, provides:

*Rule 6.2 Mandates*

(a) *When Issued.* Mandates shall issue to the lower tribunal after 21 days from the date of judgment. The timely filing of a petition for rehearing will stay the mandate until disposition of the petition. If the petition is denied, the mandate shall issue 7 days after denial of the petition. A copy of the opinion or order of the court shall accompany the mandate.

*Background*

In Patent Appeal No. 9158, we affirmed the decision of the Patent and Trademark Office (PTO) Board of Appeals in an unpublished opinion on May 9, 1974. The application contained no allowed claims. A petition for rehearing was filed on May 24, 1974 and rehearing was denied on June 20, 1974. The Clerk advised petitioners' attorney of the denial in a letter dated June 20, 1974, which was received by the attorney on June 21, 1974. This court's mandate issued (and presumably was mailed to the PTO) on June 28, 1974 pursuant to CCPA Rule 6.2(a).[1] The critical date when the PTO received the mandate is presently unknown because the original mandate, bearing the date of receipt, is in the file for application serial No. 677,739 and that file cannot be located in the PTO at this time. According to the Solicitor, the original mandate was date-stamped upon receipt by the PTO. That paper was subsequently entered in the application file, which was then returned to the examiner by the Solicitor. Also a copy of the mandate was forwarded by the PTO to the applicants. They received it on July 8, 1974. However, that copy was not date-stamped. No independent record was made of when the mandate was received, apart from the date-stamping on the original mandate. Hence, to determine when the mandate was received, it is necessary to obtain the file of the application involved in the appeal.

After consulting with the petitioners (inventors) and their assignee on June 28 and 29, 1974, petitioners' attorney filed in the PTO on July 3, 1974[2] a purported continuation application under 37 CFR 1.60.[3] The

2. We take judicial notice that the day the mandate issued, June 28, 1974, was a Friday, and that July 3, 1974 was the following Wednesday.

3. 37 CFR 1.60 (as of July 3, 1974):

§ *1.60 Continuing application for invention disclosed and claimed in a prior application*

A continuation or divisional application (filed under the conditions specified in 35 U.S.C. 120 or 121), which discloses and claims only subject matter disclosed in a prior application may be filed as a separate

"continuation" application was then prosecuted to allowance and issued as United States Patent No. 3,930,854 on January 6, 1976.

In April, 1976, patent counsel for a "prospective licensee" found that the file of application serial No. 677,739 was unavailable in the PTO and informed petitioners' attorney of this fact.

On May 17, 1976, petitioners filed the instant paper entitled "Motion to Vacate Final Mandate." As pointed out in *In re Willis*, 537 F.2d 513, 190 U.S.P.Q. 327 (Cust. & Pat.App.1976), such a title is erroneous because there is no appeal before us in relation to which a "motion" may be filed. It is, however, being considered on its merits as a petition. By requesting recall of our mandate and a redating of it as of July 5, 1974, petitioners seek to make certain the pendency period of application serial No. 677,739 in order to provide the benefit of the filing date of that application under 35 U.S.C. § 120 [4] for the "continuation" application filed on July 3, 1974.

As justification for the extraordinary action requested, petitioners contend: that their attorney inadvertently "misdocketed" the time for taking further action, *i. e.,* the time for filing a continuation application, as July 10, 1974, apparently using the twenty day period for seeking rehearing as a guide

to action in proper time; [5] that their attorney apparently employed the rules of this court which were in effect prior to January 1, 1974, which did not explicitly state the time when the mandate would issue; that their attorney believed proceedings in the PTO did not terminate until the time for a petition for a writ of certiorari to the Supreme Court had expired; that their attorney acted as quickly as possible in filing the "continuation" application after meeting with the inventors and their assignee; and that the PTO had full knowledge of all the facts, *i. e.,* whether the proceedings in the appealed application terminated prior to July 3, 1974, yet the PTO accepted the "continuation" application as properly filed under 37 CFR 1.60 and did not raise the issue of lack of copendency in issuing the second application as a patent.

In a supplemental memorandum filed on August 10, 1976, petitioners argue that *In re Willis, supra,* is distinguishable from the present petition in that:

> It is particularly stressed that the Court in ruling against the petitioner Willis indicated that:
>
> ". . . No unjust or unfair conduct of either the court or the PTO is asserted."

Unjust and unfair conduct on the part of the Patent and Trademark Office (PTO) has clearly occurred in this case,

---

application before the patenting or abandonment of or termination of proceedings on the prior application. If the application papers comprise a copy of the prior application as filed, signing and execution by the applicant may be omitted provided the copy either is prepared and certified by the Patent and Trademark Office or is prepared by the applicant and verified by an affidavit or declaration by the applicant, his attorney or agent, stating that it is a true copy of the prior application as filed. Certification may be omitted if the copy is prepared by and does not leave the custody of the Patent and Trademark Office. Only amendments reducing the number of claims or adding a reference to the prior application (§ 1.78(a)) will be entered before calculating the filing fee and granting of the filing date.

4. 35 U.S.C. § 120:

§ 120. *Benefit of earlier filing date in the United States.*

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

5. Petitioners have submitted as an exhibit a photocopy of a calendar in which a notation for July 10, 1974 refers to refiling a certain docket number case which petitioners identify as the appealed application.

and this unjust or unfair conduct greatly injures both petitioners and the public.

Specifically, the PTO has lost the file in Application Serial No. 677,739, which was the subject of the present Appeal to this Court, and they have failed to maintain any independent record of the date of receipt of this Court's Mandate or to inform petitioners thereof. As a result of these improprieties on the part of the PTO, it is impossible to now determine the date on which this Court's Mandate was received by the PTO and, therefore, whether the patent which has issued is invalid for lack of copendency with the parent abandoned application S.N. 677,-739.

## OPINION

It is possible that our mandate was received in the PTO after July 3, 1974, and therefore, copendency existed between the two applications. In that event, the instant petition is moot. However, because the file of application serial No. 677,739 cannot be located, uncertainty has been created. The purpose of the present petition is to remove that uncertainty and assure copendency by redating the mandate. As the Solicitor notes, petitioners "are simply asking the Court to remove a possible cloud on their issued patent, long after the decision in this appeal became final."

■ We held in *In re Willis, supra,* that this court has the power, in the interest of justice, to recall its mandate in an appropriate case, and this power should be exercised sparingly and only upon a showing of good cause.[6] The recall of an appellate mandate is a manifestation of equity jurisprudence

at the appellate level to avoid an unconscionable injustice. *Greater Boston Television Corp. v. F. C. C.,* 149 U.S.App.D.C. 322, 463 F.2d 268, 279 (1971), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972). Each petition to recall a mandate must be judged on its own facts. Here, petitioners have not persuaded us that the interest of justice necessitates recall of the mandate.

■ On January 1, 1974, this court's new rules became effective. It is true, as petitioners point out, that the prior rules did not state the time when the mandate would issue. That situation changed with the adoption of CCPA Rule 6.2(a), *supra* note 1. Attorneys appearing before this court are presumed to have knowledge of the provisions of the *current* court rules. Petitioners' attorney filed a petition for rehearing on May 24, 1974, nearly six months after the effective date of the new rules, and the attorney acknowledges receipt on June 21, 1974 of the Clerk's letter stating that rehearing was denied. Petitioners could have then stayed the issuance of our mandate under CCPA Rule 6.2(b),[7] or they could have promptly filed a continuation application before the mandate issued on June 28, 1974.

■ To excuse the delay in filing the continuation application, petitioners allege that the time for taking further action was "misdocketed" using the twenty day period for petitioning for rehearing as a guide. Accepting this allegation as true, it is an insufficient excuse where a petition for rehearing had been filed and it was the denial thereof which prompted the new docket entry. Petitioners argue that the

---

**6.** CCPA Rule 1.4(c) provides:

*Rule 1.4 Applicability and Waiver of Rules*

\* \* \* \* \* \*

(c) *Waiver.* On motion and for good cause or at the court's own instance, the court may waive or modify any provision of these rules or waive any provision of the Federal Rules of Appellate Procedure.

**7.** CCPA Rule 6.2(b) provides:

*Rule 6.2 Mandates*

\* \* \* \* \* \*

(b) *Stay.* A stay of the mandate pending application to the Supreme Court of the United states for a writ of certiorari may be granted upon motion served on all parties. The stay shall not exceed 30 days unless the period is extended for cause shown. If during the stay the petition for a writ of certiorari has been filed, the stay will continue until final disposition of the case by the Supreme Court. Upon receipt of an order of the Supreme Court denying the petition, the mandate of the court shall issue.

"continuation" application was filed as quickly as possible after meeting with their attorney. This is an insufficient excuse because the attorney waited for seven weeks after our decision of May 9, 1974 before meeting with petitioners and their assignee regarding the filing of a continuation application.

Petitioners' attorney further alleges that he believed proceedings in the PTO did not terminate until the time for a petition for writ of certiorari to the Supreme Court had expired. Apparently petitioners did not know that receipt of the mandate by the PTO terminated proceedings in the case. See MPEP 1216.01. Although this may be a common mistake,[8] we deem it an inadequate excuse.

Finally, petitioners urge that the PTO allowed the "continuation" application without raising any question about copendency and that it was "unjust and unfair conduct" by the PTO to misplace the file of the appealed application and to fail to maintain an independent record of the date of receipt of the mandate or to inform petitioners thereof. However, when the petition for rehearing was denied, petitioners should have known that they had seven days plus mailing time to the PTO within which to file a continuation application. The conduct of the PTO in misplacing the file and in failing to keep independent records had no effect on petitioners' duty to act within the specified time. Moreover, petitioners received a copy of our mandate which lacked the PTO date of receipt so they should have realized that uncertainty existed. They could have easily inquired regarding copendency, but they did not follow this prudent course. It is unfortunate that the file cannot be located and that an independent record of the date of receipt was not maintained. However, these facts do not show unjust and unfair conduct by the PTO.

In conclusion, petitioners have not made a showing of good cause. Accordingly, the petition for recall of the mandate is *denied*.

---

8. See *Continental Can Co. v. Schuyler*, 326 F.Supp. 283, 168 USPQ 625 (D.D.C.1970).