John. KRENZER, Petitioner,

v.

Paul J. STOFFEL and Ignatius
Schumacher, Respondents.

Patent Appeal No. 9198.

United States Court of Customs
and Patent Appeals.

March 10, 1977.

Arnold H. Cole, St. Louis, Mo., C. Frederick Leydig, Stephen G. Rudisill, Leydig, Voit, Osann, Mayer & Holt Ltd., Chicago, Ill., Richard H. Bradford, Gardiner, Sixbey & Bradford, Arlington, Va., attorneys of record, for appellant.

Robert J. Schwarz, Chicago, Ill., Francis D. Thomas, Bacon & Thomas, Arlington, Va., Donald A. Peterson, Neuman, Williams, Anderson & Olson, Chicago, Ill., attorneys of record, for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This case is before us on a petition by the party Krenzer to "recall, set aside and vacate" our mandate in appeal No. 9198, decided June 27, 1974.[1] The basis for the petition is an alleged fraud on this court and on the Patent and Trademark Office (PTO) Board of Patent Interferences (board) by the respondents Stoffel and Schumacher (Stoffel). Stoffel has requested oral argument. We deny the Krenzer petition; the Stoffel request is thus moot.

*Background*

To put this petition in perspective, we describe the prior proceedings. Krenzer and Stoffel were parties to an interference (No. 96,419) in which Krenzer was junior party.[2] The interference comprised only one count:

A method of destroying undesired vegetation which comprises applying to said

1. The opinion was not published.

2. Krenzer was involved on the basis of his application serial No. 703,497, filed November

17, 1967, but was accorded the filing date of a parent application, serial No. 535,323, filed March 18, 1966. The Stoffel application, serial No. 513,577, was filed December 13, 1965.

vegetation a herbicidally effective amount of a compound of the formula

wherein R is lower alkyl, Y is a member of the group consisting of oxygen and sulfur, each X is independently selected from the group consisting of lower alkyl, lower alkoxy, nitro and halogen, and n is an integer from 0 to 4, inclusive. [Ring position numbers added.]

The compounds defined in the count are 3,5-dioxo-1,2,4-oxadiazolidines and 3-thiono-5-oxo-1,2,4-oxadiazolidines which are substituted at the N-2 nitrogen with phenyl (or substituted phenyl) and at the N-4 nitrogen with lower alkyl.[3]

The issues before the board were: (1) whether the Stoffel application sufficiently indicated how to make the compounds defined in the count, i. e., whether Stoffel had a "right to make" the count; and (2) whether Krenzer's priority proofs established an actual reduction to practice prior to Stoffel's reduction to practice. As to the first issue, Stoffel's specification stated that the compounds could be prepared "by the reaction of an isocyanate with a hydroxyl amine and ethylchloroformate." For details, such as reaction scheme, selection of particular reactants, and reaction conditions, Stoffel referred to a publication of Zinner. This publication referred to still other publications of Zinner on which Stoffel also relied.

It was not disputed that the Zinner publications showed how to prepare 3,5-dioxo-1,-2,4-oxadiazolidines (and presumably 3-thiono-5-oxo-1,2,4-oxadiazolidines). The question framed by the board, however, was whether Zinner taught the preparation of "the much narrower group of compounds embraced by the count." The board decided that question against Stoffel after finding an example in Zinner in which, according to the board, "no ring closure was effected." Had closure been effected, the end-product would have been 2-phenyl-4-butyl-3,5-dioxo-1,2,4-oxadiazolidine, a compound within the count, and apparently the only compound within the count which Zinner mentions.

Stoffel appealed the board's decision to this court in appeal No. 9198. We reversed the board and remanded the case for consideration of the priority proofs. Our reading of Zinner had persuaded us that although no ring closure had been effected in the example cited by the board, it was because ring closure had not been attempted. The negative inference drawn by the board, i. e., that Zinner had unsuccessfully tried to make a compound of the count, was therefore without foundation. Other facts also militated against a negative inference. First, Zinner showed the successful preparation of 2-phenyl-4-cyclo-hexyl-3,5-dioxo-1,2,4-oxadiazolidine, a compound very close to those of the count. Second, Stoffel stated in his application that he had successfully prepared 2-phenyl-4-methyl-3,5-dioxo-1,-2,4-oxadiazolidine, a compound within the count, by the Zinner method referred to. Given these teachings, we found that no technical reason was apparent why the example referred to by the board could not be prepared by the same technique. We concluded that Stoffel's specification and the Zinner publications were sufficient "to enable any person skilled in the art to make the compounds which are employed in the recited method."

After remand, the board considered the priority proofs and awarded priority to Stoffel. Krenzer's assignee then filed a civil action under 35 USC 146 against Stoffel's assignee in the United States District Court for the Northern District of Illinois. *Velsicol Chemical Corp. v. Monsanto Co.,* Civil Action No. 74 C 3702 (N.D.Ill., filed

---

**3.** It is helpful to note that Stoffel claimed many other 3,5-dioxo- (and 3-thiono-5-oxo-) 1,2,4-oxadiazolidines.

December 20, 1974). During the course of that proceeding, Velsicol obtained documents and depositions which it alleged showed improper and fraudulent conduct on the part of Stoffel before the board and this court on the "right to make" issue. The District Court refused to permit Velsicol to relitigate the "right to make" issue on the ground of res judicata. The District Court also refused to remand the case to the board to consider the fraud allegations, stating that the case was almost ready for trial and that Velsicol had already filed a petition with the Commissioner of Patents and Trademarks under 37 CFR 1.56 to strike the Stoffel application for fraud. The court stated that a remand would only result in "a duplication of effort before the Commissioner" and that to grant it would "tend to reward the plaintiff's proliferation of litigation." Ultimately, the District Court entered an order that Stoffel was entitled to "judgment affirming the decision of the Board of Patent Interferences."

Meanwhile, Krenzer's Rule 56 petition was pending before the Commissioner. Instead of ruling on the merits of the petition, the Commissioner issued an interlocutory ruling which states in relevant part:

> Inasmuch as Krenzer alleges that a fraud has been committed on the U. S. Court of Customs and Patent Appeals and since the Office should not presume to determine what effect, if any, the acts alleged by Krenzer, if proven, would have had on the proceedings before the Court, further action on the petition is being held in abeyance for a period of one (1) month to permit Krenzer to bring the matter to the attention of the Court in the form [of] a motion to recall its mandate. See *Kravig v. Henderson*, 393 F.2d 1017, 55 CCPA 1182, 157 USPQ 564 (1968).

Krenzer filed this petition pursuant to the Commissioner's suggestion.

### Petitioner's Arguments

Krenzer's petition is based on documents and depositions obtained by Velsicol in the district court action. He alleges that they show that Stoffel improperly or fraudulently withheld information from this court in appeal No. 9198 and from the PTO in the proceedings which led up to that appeal. More particularly, Krenzer alleges:

1. That Stoffel failed to disclose ethyl chloroformate as a critical reactant in the application as originally filed and that such failure was "grossly negligent, deliberate and reckless," since Stoffel knew that ethyl chloroformate was a necessary reactant when the application was filed. Krenzer admits, as he must, that the application was amended to disclose ethyl chloroformate as a reactant before the declaration of the interference which led to appeal No. 9198.

2. That Stoffel committed fraud in failing to disclose certain unsuccessful experiments. Krenzer points to certain pages of Stoffel's laboratory notebooks obtained by discovery in the district court action to show that "although Stoffel followed the general method of Zinner by reacting a hydroxylamine, an isocyanate and ethyl chloroformate in attempting to make certain substituted phenyl oxadiazolidines, he met with repeated failures." Krenzer regards as "especially noteworthy" a notebook entry which he characterizes as an "abortive attempt" to make a 2-substituted phenyl-4-alkyl-3,5-dioxo-1,2,4-oxadiazolidine which he describes as "the prize sought in this whole interference proceeding."

3. That Stoffel failed to disclose the fact that the substituted phenyl hydroxylamines, starting materials for making compounds of the count, were unstable. Krenzer refers to a Stoffel summary report obtained in discovery in which it is stated that: "All substituted phenyl hydroxylamines, particularly the chloroderivatives, are notoriously unstable."

### OPINION

■ We hold the allegations of fraud to be without merit. The allegation that Stoffel deliberately failed to disclose ethyl chloroformate as a necessary reactant in the application as originally filed is incredible. We cannot conceive of this applicant deliberately filing an application with a defect

so obvious that it would be discovered by the first person who attempted to follow its teachings. Deliberate failure to disclose is inconsistent with the fact that Stoffel did disclose ethyl chloroformate as a necessary reactant by the amendment referred to above.

■ As to the unsuccessful experiments Krenzer has found in Stoffel's laboratory notebooks, only one of the compounds which Krenzer alleges Stoffel unsuccessfully tried to make is within the count. Krenzer admits this, but states that Stoffel "argued the applicability of the Zinner disclosures *in general,*" pointing to the illustration of 23 Zinner compounds in Stoffel's brief in appeal No. 9198, all of which lie outside the count. It is clear, however, from the remarks prefacing and concluding those illustrations, that Stoffel was merely demonstrating that the substituent of the hydroxylamine reactant goes to the N-2 nitrogen atom of the product of the Zinner reaction, while the substituent of the isocyanate reactant goes to the N-4 nitrogen atom. This demonstration was made to support Stoffel's argument that: "If one skilled in the art is just given the information of these [Zinner] equations and told to prepare a 2-phenyl-4-alkyl compound [the compounds of the count], he need only select phenyl hydroxylamine and an alkyl isocyanate as the starting materials." Thus, the argument which Stoffel actually made is quite different from an argument premised on the general operability of the Zinner method for compounds outside the count. Indeed, the latter argument could hardly have been made, since in appeal No. 9198 both Krenzer and Stoffel pointed out where Zinner had failed to make two compounds outside the count.

The single compound within the count which Krenzer charges Stoffel with failing to make is one for which Stoffel was unable to prepare the *starting* material, a hydroxylamine, and apparently just turned to another experiment. This is quite clear from an examination of the notebook page on which the experiment appears. It can hardly be termed a failure, and Stoffel has pointed to other methods, known to those skilled in the art, by which that starting material could have been prepared. Krenzer does not deny that these methods were available. Stoffel also points out that the same compound was prepared by Krenzer according to the Zinner method. Krenzer can only lamely respond that although the reactants he used to prepare the compound were similar, there is no evidence that he in fact used the Zinner method.

■ Finally, the Stoffel summary report does not support any withholding of information of the instability of the substituted phenyl hydroxylamines. That report refers to the alleged instability as "notorious," a clear indication that those skilled in the art were already aware of it.

We have said that proof of fraud must be clear and convincing, imposing on one alleging fraud, "a heavy burden of persuasion." *Norton v. Curtiss,* 433 F.2d 779, 57 CCPA 1384, 167 USPQ 532 (1970). The evidence presented here certainly does not meet that standard. It therefore fails as a basis for an equitable defense and it certainly fails when, as here, it is employed as a basis for having this court recall a mandate which has long since been acted on by the Patent and Trademark Office.

PETITION DENIED.

LANE, Judge, with whom MILLER, Judge, joins, dissenting.

With all due respect, I find myself in disagreement with a substantial portion of the opinion of the majority in this case. I do agree with that portion of the majority opinion which finds Krenzer's first and third contentions in his petition completely groundless. If these were the only contentions in the petition, I would have no trouble joining my colleagues in denying it. However, I am most troubled by Krenzer's second contention, to wit, that Stoffel et al. (Stoffel) committed fraud on the PTO and this court in withholding evidence of certain unsuccessful attempts to make compounds closely related to those recited in the count using the Zinner technique. In

my view, that evidence directly bears on and is highly relevant to the question of whether one skilled in the art could make the compounds recited in the count by following the Stoffel disclosure.

I should like to begin by focusing on the role that the four Zinner publications (collectively termed Zinner) have played both in and before this interference proceeding.

The specific compounds recited in the method of the count were, as far as this record shows, new compounds of the class 2-phenyl or substituted phenyl-4-lower alkyl-3,5-dioxo-1,2,4-oxadiazolidines and 2-phenyl or substituted phenyl-4-lower alkyl-3-thiono-5-oxo-1,2,4-oxadiazolidines. The Zinner publications disclose how to prepare, 2,4-disubstituted-3,5-dioxo-1,2,4-oxadiazolidines and 2,4-disubstituted-3-thiono-5-oxo-1,2,4-oxadiazolidines. Preparation is accomplished by reacting an isocyanate with a hydroxylamine to yield an N-hydroxyurea and then reacting the N-hydroxyurea with a chloroformate to yield the oxadiazolidine. Alternatively, Zinner discloses that the same compounds can be obtained by reacting a hydroxylamine with a chloroformate to yield a carbamate and then reacting the carbamate with an isocyanate to yield the oxadiazolidine.

Zinner was inserted into Stoffel's specification by amendment during ex parte prosecution to overcome a § 112, first paragraph, "how-to-make" rejection by the examiner. The examiner stated that the original disclosure was deficient in disclosing the preparation of the compounds recited in the claims. The amended specification recited:

The useful compounds are prepared by the reaction of an isocyanate with a hydroxylamine <u>and ethylchloroformate. Preparation of these compounds is described in detail by Zinner and Webber, Arch. Pharm. 298, 805–809, November 1965.</u> [Underlined matter added by amendment.]

The examiner accepted the addition of Zinner to the specification as overcoming the rejection. In his next action he suggested that Stoffel copy a claim for interference purposes. This claim became the count in issue.

Zinner, however, did not discuss the specific preparation of *any* of the disubstituted compounds recited in the count. Indeed, there was only one mention of a disubstituted compound which, if made, would have been one recited in the count, namely, 2-phenyl-4-butyl-3,5-dioxo-1,2,4-oxadiazolidine; and, Zinner was silent on whether or not this compound was made. Nevertheless, Stoffel contended throughout the interference that Zinner, as a general teaching for making 2,4-disubstituted-3,5-dioxo-1,2,4-oxadiazolidines and 2,4-disubstituted-3-thiono-5-oxo-1,2,4-oxadiazolidines, when coupled with the Stoffel disclosure of the class of compounds recited in the count, was sufficient to show one skilled in the art how to make that class of compounds.

To this end Stoffel urged: [1]

Certainly anyone having the slightest skill in the art, having the above teachings [Zinner] before him and desiring to prepare a compound within the class of the instant count, is capable of selecting the proper isocyanate and hydroxylamine to prepare the compounds using the procedures set forth in the examples of Zinner et al.

In support of the proposition urged, Stoffel repeatedly referred to specific compounds actually synthesized by Zinner which, although not within the class of compounds recited in the count, were related to them in that they were either analogs or isomers thereof. Thus, in his brief before the board Stoffel specifically referred to Zinner's procedure for the synthesis of 2-methyl-4-phenyl-3-thiono-5-oxo-1,2,4-oxadiazolidine and 2-methyl-4-ethyl-3-thiono-5-oxo-1,2,4-oxadiazolidine as almost identical to the procedure used by Stoffel to prepare 2-phenyl-4-methyl-3,5-dioxo-1,2,4-oxadiazo-

1. Stoffel opposition to Krenzer's motion to dissolve interference No. 96,419 with respect to the party Stoffel, filed April 21, 1969.

lidine, a compound falling within the class of compounds recited in the count. References to other specific compounds synthesized by Zinner occurs throughout the Stoffel brief before the board and the Stoffel brief before this court.

One problem with Stoffel's contention was that Zinner itself recognized instances where compounds could not be synthesized using the disclosed Zinner reaction procedure. Thus, the board's opinion, in addition to concluding that Zinner could not effect ring closure with 2-phenyl-4-butyl-3,5-dioxo-1,2,4-oxadiazolidine, noted the expressed failure of Zinner to make the compound 2-cyclohexyl-4 ethyl-3,5-dioxo-1,2,4-oxadiazolidine and the compound 4-cyclohexyl-3,5-dioxo-1,2,4-oxadiazolidine. It was because of these failures, which cast doubt on the ability of one skilled in the art to extrapolate Zinner to make the compounds recited in the count, that the board concluded that Zinner was in fact insufficient to teach one skilled in the art to make the specific compounds of the class recited in the count.

On appeal to this court, Stoffel continued to contend that Zinner was sufficient to teach one skilled in the art how to make the compounds recited in the count. They argued the general applicability of Zinner's reaction mechanism as well as pointing to the specific compounds actually made by Zinner. On this point, the Stoffel brief before this court listed 23 different 2,4-disubstituted-3,5-dioxo-1,2,4-oxadiazolidines and 2,4-disubstituted-3-thiono-5-oxo-1,2,4-oxadiazolidines made by Zinner noting that seven of the 23 were "simple mirror isomers" of the compounds of the count. Stoffel also pointed out that the remaining 16 were analogs of the compounds recited in the count. The whole point to Stoffel's argument, of course, was to minimize any adverse impact the abortive or unsuccessfully attempted synthesis of compounds by Zinner might have on the issue of whether Zinner's reaction could be straightforwardly applied to make the compounds recited in

the count in issue. To this end the Stoffel brief before this court stated:

> As opposed to the two unsuccessful attempts of Zinner et al I, in each of which either R or R′ was a cyclohexyl radical, the four [Zinner] articles teach the successful preparation of almost two dozen 1,2,4-oxadiazolidines in accordance with the synthesis methods described in detail.

In our decision we agreed with Stoffel's contention. Although the board concluded that "no ring closure was effected" by Zinner with respect to 2-phenyl-4-butyl-3,5 dioxo-1,2,4-oxadiazolidine, we concluded that no attempt was made by Zinner to synthesize this compound. We viewed the evidence of record as establishing the fact that "no technical reason was apparent" why this compound could not be made using the Zinner reactions. We did not find Zinner's failure to make two of his attempted compounds to be significant and controlling. We concluded that Stoffel's specification, together with the knowledge found in Zinner, was sufficient to enable any person skilled in the art to make and use the compounds recited in the count.

While Stoffel were making their arguments to the examiner, the board, and this court, they were in possession of evidence which, in my view, may have altered the decision of this court (and perhaps that of the examiner in withdrawing his § 112 rejection) on the "right-to-make" issue. That evidence, primarily taken from joint inventor Stoffel's laboratory notebook, indicates that Stoffel, prior to their filing date, attempted to make various compounds of the generic formula 2,4-disubstituted-3,5-dioxo-1,2,4-oxadiazolidine and 2,4-disubstituted-3-thiono-5-oxo-1,2,4-oxadiazolidine using the Zinner reaction scheme. If Stoffel's contentions to the PTO and this court were valid, it should have been a straightforward procedure for Stoffel to make *all* of the compounds attempted, since all that was necessary was the "selecting [of] the proper isocyanate and hydroxylamine to prepare the compounds using the procedures set forth in the examples of Zinner et al." [2]

2. Note 1, supra.

Stoffel's notebook entries, however, appear to refute the validity of their contention.

Although a successful synthesis was obtained by Stoffel for many of the compounds attempted, there were many failures. All of the compounds which Stoffel tried to synthesize were either analogs or isomers of the compounds recited in the count. The compounds involved, with unsuccessful synthesis indicated by an asterisk, can be tabulated as follows:[3]

Analogs

1. 2-phenyl-4-(3',4'-dichlorophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
2. 2-phenyl-4-(4'-chlorophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
3. 2-phenyl-4-(4'-methylphenyl)-3,5-dioxo-1,2,4-oxadiazolidine
4. 2-phenyl-4-(4'-nitrophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
5. 2-phenyl-4-(3'-chlorophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
6. 2-phenyl-4(3'-trifluoromethylphenyl)-3,5-dioxo-1,2,4-oxadiazolidine
7. 2-phenyl-4-(4'-methoxyphenyl)-3,5-dioxo-1,2,4-oxadiazolidine
8. 2-phenyl-4-(3'-nitrophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
9. 2-phenyl-4-chyclohexyl-3,5-dioxo-1,-2,4-oxadiazolidine
10. *2-phenyl-4-(2'-chlorophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
11. *2-phenyl-4-(2',5'-dichlorophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
12. *2-phenyl-4-phenyl-3,5-dioxo-1,2,4-oxadiazolidine
13. *2-phenyl-4-(3'-methylphenyl)-3,5-dioxo-1,2,4-oxadiazolidine
14. *2-phenyl-4-cyclohexyl-3-thiono-5-oxo-1,2,4-oxadiazolidine
15. *2-phenyl-4-(3',4'-dichlorophenyl)-3-thiono-5-oxo-1,2,4-oxadiazolidine
16. *2-phenyl-4-(3'-chlorophenyl)-3-thiono-5-oxo-1,2,4-oxadiazolidine

Isomers

1. 2-methyl-4-(4'-ethoxyphenyl)-3,5-dioxo-1,2,4-oxadiazolidine
2. 2-methyl-4-(4'-chlorophenyl)-3-thiono-5-oxo-1,2,4-oxadiazolidine
3. 2-methyl-4-(4'-chlorophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
4. 2-methyl-4-(3',4',dichlorophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
5. 2-methyl-4-(3'-chlorophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
6. 2-methyl-4-(4'-methylphenyl)-3,5-dioxo-1,2,4-oxadiazolidine
7. 2-methyl-4-(3'-methylphenyl)-3,5-dioxo-1,2,4-oxadiazolidine
8. 2-methyl-4-(3',4',dichlorophenyl)-3-thiono-5-oxo-1,2,4-oxadiazolidine
9. 2-methyl-4-(4'-nitrophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
10. *2-methyl-4-(2-*t*-butyl-6-methylphenyl)-3-thiono-5-oxo-1,2,4-oxadiazolidine
11. *2-methyl-4-(2'-methylphenyl)-3,5-dioxo-1,2,4-oxadiazolidine
12. *2-methyl-4-(2'-nitrophenyl)-3,5-dioxo-1,2,4-oxadiazolidine
13. 2-methyl-4-(3'-nitrophenyl)-3,5-dioxo-1,2,4-oxadiazolidine

In addition, Stoffel's records indicate that the compound 2-(3',4'-chlorophenyl)-4-methyl-3,5-dioxo-1,2,4-oxadiazolidine was not made because a well-known starting material necessary for the synthesis could not be made by Stoffel.

From the above, it is evident that with respect to the analogs of the compounds recited in the count, Stoffel was unable to synthesize 44 percent of those attempted. Yet complete success should have been achieved if, as contended by Stoffel, Zinner's general reactions were reliable. With respect to the isomers a 23 percent failure rate occurred. Stoffel even noted a whole class of compounds which could not be produced using Zinner's teachings. A progress report authored by Stoffel covering the period March-September 1964 stated:

---

**3.** This tabulation is from a summary compiled by Krenzer. Stoffel has not objected to its accuracy.

A series of 1,2,4-[oxa]diazolidine-3,5-diones was prepared; see Tables I and II. Phenyl hydroxyureas containing *any* ortho substituent (Cl, NO$_2$, CH$_3$, OCH$_3$) could not be cyclized to the oxa[dia]zolidine dione. This "ortho effect" has been noted and reported . . . in 3 other systems in which all substituted phenyl derivatives cyclize except those substituted in the ortho position. [Bracketed material added, emphasis in original.]

Of course, the count in issue recites 1,2,4-oxadiazolidine-3,5-diones containing a phenyl ring which can be substituted in the ortho position.

In my view this evidence, solely in the possession of Stoffel, is highly relevant to the right-to-make issue. It certainly supports the board's original skepticism of the Zinner teachings. If Zinner is not reliable, a serious question is raised whether one skilled in the art, following the Zinner procedures, could make the subject matter of the counts in issue, particularly with respect to those compounds possessing ortho substituted phenyl derivatives. I therefore cannot so lightly dismiss the evidence withheld as does the majority. I also do not agree with the majority that the general operability of Zinner was not in issue throughout this proceeding. Since not one compound falling within the class of compounds recited in the count was made by Zinner, the general operability of Zinner was in issue all along. Stoffel's whole argument was premised on an extrapolation of the Zinner disclosure.

Although I disagree with the majority's evaluation of the evidence submitted by Krenzer in his petition, I do not believe it necessary at this juncture to pass on whether Stoffel's conduct in not bringing their unsuccessful experiments to the attention of this court and the PTO amounted to fraud. In my view there need not be clear and convincing evidence of fraud for this court to recall and vacate its mandate, although such evidence would unquestionably warrant such action. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64

S.Ct. 997, 88 L.Ed. 1250, 61 USPQ 241 (1944). This court has the power, in the interests of justice, to recall and vacate its mandate in an appropriate case. *In re Willis*, 537 F.2d 513, 190 USPQ 327 (Cust. & Pat.App.1976). As stated in *Willis* and *In re Jones*, 542 F.2d 65, 191 USPQ 249 (Cust. & Pat.App.1976), that power should be exercised sparingly and only upon a showing of good cause. Some evidence of fraud is good cause. *Kravig v. Henderson*, 393 F.2d 1017, 55 CCPA 1182, 157 USPQ 564 (1968). In *Kravig* we were presented with an argument by one of the parties to an interference that the other party had committed fraud by submitting false evidence in the interference. At the time of the allegation, our mandate had issued remanding the case to the Board of Patent Interferences for action on another matter. We found that the allegations and supporting depositions raised "questions of sufficient import to warrant enlarging the scope of our remand."[4] Presumably, if we found those allegations completely meritless we would have merely denied the motion. Cf. *Smith v. Hayward*, 193 F.2d 198, 39 CCPA 748, 92 USPQ 126 (1951). We did not pass on the merits of the allegation in *Kravig* because we preferred, as a court of review, not to decide any matters relating to priority, or the evidence relating thereto, which had not first been considered by the board. *Kravig v. Henderson*, 393 F.2d at 1018, 55 CCPA at 1184, 157 USPQ at 565. I believe a similar rationale should apply here.

The remedy ultimately sought by Krenzer is the striking of the Stoffel application from the PTO files under 37 CFR 1.56. Indeed, this petition is before us only because of an interlocutory ruling by the Commissioner on Krenzer's petition to the Commissioner to strike the Stoffel application. A decision by this court on the substantive fraud issue would, for all intents and purposes, dictate the outcome of Krenzer's petition to strike. However, a decision to strike a party's application should be made "in the first instance" by the Commissioner. *Vandenberg v. Reynolds*, 242 F.2d

4. Order entered Feb. 6, 1967 in Patent Appeal No. 7862.

761, 44 CCPA 873, 113 USPQ 275 (1957). Accordingly, I believe we should follow the procedure in *Kravig,* i. e., remand to the board, thereby allowing for a decision of the Commissioner on Krenzer's petition to strike.

I am also troubled by another aspect of this case. As noted earlier, I find the withheld evidence to be highly relevant to the right-to-make issue. This is true regardless of whether the withholding of it amounts to fraud. Of course, if Krenzer ultimately prevails in his petition to the Commissioner, the right-to-make issue becomes moot because the Stoffel application will be stricken from the files. However, if Krenzer does not prevail, the right-to-make issue would stand without any tribunal having decided that issue in view of *all* of the evidence now available.

In view of the above considerations and the strong public policy favoring the issuance of a valid patent to the proper party, I believe that justice would be best served in this case by granting the Krenzer petition to recall and vacate our mandate to the extent that we reassume jurisdiction over the case and remand the same to the board. The board could then reconsider the right-to-make issue in light of the evidence of the Stoffel unsuccessful experiments. The board could also consider the fraud issue (presumably in conjunction with the present petition before the Commissioner), since that issue is ancillary to priority. *Norton v. Curtiss,* 433 F.2d 779, 57 CCPA 1384, 167 USPQ 532 (1970). In this manner a full and fair hearing of all matters raised by the second contention in the Krenzer petition can be obtained.